UNITED STATES GYPSUM CO. *v.* CHRISTENSON.

1. HIGHWAYS AND STREETS—LICENSE TO USE A HIGHWAY DOES NOT CONSTITUTE ABANDONMENT.

In the absence of other proceedings to vacate or alter a highway the act of the township board in permitting the erection of a sawmill on a part of a public highway did not of itself constitute an abandonment of the highway.

2. SAME — ABUTTING FEE OWNER MAY MAINTAIN EJECTMENT AGAINST ONE USING PART OF HIGHWAY.

An abutting fee owner may bring ejectment against one who ousts him of the possession of his land lying between his lot and the center of the highway.

3. SAME—ABUTTING OWNER HAS FEE OF HIGHWAY—PUBLIC HAS EASEMENT ONLY.

A township does not have the fee of the land in a public highway, but it is in the abutting owner with the right of reversion in case the highway is vacated or abandoned, and the public has merely an easement therein for highway purposes.

On necessity of color of title when not expressly made a condition by statute to found title by adverse possession, see note in 15 L. R. A. (N. S.) 1178.

On question of hostility as essential element in adverse possession, see note in 15 L. R. A. (N. S.) 1192.

On power of municipality as against abutting owner to vacate street or portion thereof and devote same to private purposes, see note in 22 L. R. A. (N. S.) 530.

4. SAME—LICENSE TO USE PART OF HIGHWAY NOT A CONVEYANCE—
PRESUMPTIONS.

Since a township board had no right to convey land in
a highway and there is no record that it ever attempted
to do so, no conveyance may be presumed by its act in
granting permission to the owners of a mill to occupy
part of a highway as a mill site.

5. SAME — ONE WHO ENCROACHES UPON HIGHWAY CHARGEABLE
WITH NOTICE OF PUBLIC RIGHTS.

One who encroaches upon a public way must know, and
in contemplation of law does know, that the way belongs
to the public and that the local authorities can neither
directly nor indirectly alien the way.

6. SAME — TOWNSHIP BOARD MAY NOT PERMIT OBSTRUCTION OF
HIGHWAY.

A township board has no right to permit the obstruction
of a public highway by the erection therein of a mill.

7. ADVERSE POSSESSION—POSSESSION UNDER LICENSE NOT ADVERSE
—HOSTILITY NECESSARY ELEMENT.

Where the owners of a sawmill were granted permission
by a township board to occupy part of a public highway
with their mill, their possession is *held*, to be under said
license and in subordination to the rights of abutting
landowners, and, in the absence of evidence that the
character of their possession changed into one of open
hostility for the period fixed by the statute of limitations
(3 Comp. Laws 1915, § 12311), they acquired no title by
adverse possession; hostility being a necessary element
thereof.

Error to Iosco; Widdis (Albert), J.    Submitted
January 30, 1924.    (Docket No. 20.)    Decided March
5, 1924.

Ejectment by the United States Gypsum Company
against Emil Christenson and another.    Judgment for
defendants.    Plaintiff brings error.    Reversed.

*Nicholas C. Hartingh* and *Stoddard & McMillan*
(*Scott, Bancroft, Martin & MacLeish* and *Leland K.
Neeves*, of counsel), for appellant.

*Coumans & Gaffney*, for appellees.

CLARK, C. J.    About 1886, the township board of Alabaster, Iosco county, gave Kinney Brothers permission to construct and operate a sawmill within the limits of a public highway of the township.    The permission was given at the request of certain taxpayers and, in part, as a matter of public convenience for custom sawing.    There was no record or documentary evidence of such permission.    There is no evidence that it was limited as to time, nor that any consideration was paid.    There was an intersection of highways at the southwest corner of section 23.    From such intersection east to Lake Huron, a distance of 150 feet, the highway was 4 rods in width, the north 2 rods having been taken for highway purposes from lot 4 of section 23.    The particular portion of highway, therefore, was 66 feet wide and 150 feet long. Kinney Brothers were permitted to erect the mill and to conduct the mill business on the north 36 feet of such highway.    The south 30 feet, by agreement with the township board, was kept open to public travel. The mill was erected about 1886.    It was in character "stationary" rather than "portable."    The mill was assessed to Kinney Brothers as personal property. Lot 4 was assessed to plaintiff or its grantors.    In 1916, Kinney Brothers gave a quitclaim deed to Thomas Sheldon of the tract, 36x150 feet, describing it ambiguously, reserving, however, the mill machinery, but "leaving all woodwork of the old mill."    The machinery was removed and the mill torn down.    In its stead, Sheldon built, in 1916, a store and some small outbuildings, all located, it seems, on the north 33 feet of the highway and upon that portion of lot 4, section 23, taken for highway purposes.    Sheldon died, leaving a widow and two children.    The widow married Emil Christenson.    They occupy the store building and the premises in question.    Plaintiff brought ejectment against Mr. and Mrs. Christenson for the south 2 rods of lot 4, being the north 2 rods of the highway.

It has the record title in the regular chain of title. Defendant Mary Christenson—

"claims title in fee simple to the premises described in the declaration on file in the above entitled cause, as one of the heirs-at-law of Thomas Sheldon, grantee in a deed dated March 4, 1916, from Peter Kinney and James Kinney, as grantors unto Thomas Sheldon as grantee, recorded March 14, 1916, in Iosco county registry, in liber 54, page 593, and that the defendant, Mary Christenson, and her predecessors in title have been in actual, adverse, open, hostile, notorious and continuous possession of said premises more than fifteen years prior to the time of filing the said declaration in the above entitled cause."

Plaintiff moved for a directed verdict on the ground that the defense had failed in proof of title by adverse possession. The motion was denied. Defendants had verdict. A motion for judgment notwithstanding the verdict was also denied. Plaintiff brings error.

There was no proceeding to vacate or alter the highway. The act of the township board in permitting the erection of the mill did not of itself constitute an abandonment of the highway. Whether any part of it has ever been abandoned is a question not before us. See *Cocke* v. *Railroad Co.*, 46 Tex. Civ. App. 363 (103 S. W. 407); *Crosby* v. *City of Greenville*, 183 Mich. 452; Act No. 46, Pub. Acts of 1907 (3 Comp. Laws 1915, § 12311). An abutting fee owner may bring ejectment against one who ousts him of the possession of his land lying between his lot and the center of the highway. *Smeberg* v. *Cunningham*, 96 Mich. 378 (35 Am. St. Rep. 613).

The township did not have the fee of the land. The public had the usual easement for highway purposes, no more. The fee was in the abutting landowner, with right of reversion in case the highway was vacated or abandoned. The township board had no right to convey the highway or any part of it, and

there is no evidence, record or claim of conveyance, or of an attempted conveyance.     No grant can be presumed when the board had no power to convey. *Trustees of Caledonia County Grammar School* v. *Kent,* 86 Vt. 151 (84 Atl. 26).     We find no competent evidence in the record that the township board ever agreed or intended to give to Kinney Brothers the fee of the land, a part of the highway.     The board merely licensed or permitted such occupancy, a servitude beyond the public rights under the easement.     One who encroaches upon a public way must know, and in contemplation of law does know, that the way belongs to the public and that the local authorities can neither directly nor indirectly alien the way.     2 Elliott on Roads and Streets (3d Ed.), § 1189.     It is also true that the township board had no right to permit the obstruction in the highway.     But the record shows that it was assumed that such use of the highway for this public convenience might be permitted.     In a like case, *Monohan* v. *Railroad Co.,* 66 N. Y. Supp. 37, it was held:

"When defendant's predecessor went into possession of this street, it treated with the city of Syracuse, as the only one having an interest in or control over this public street.     It is scarcely to be presumed (as a matter of law, at least) that it intended to commit a trespass.     It may have been ignorant of plaintiffs' title to the center of the street, or may have assumed that the city had such control over its streets as to have power to grant a license to do what it did do.     At least I think it is a fair inference and presumption to hold against it that, having obtained this license, it went into possession under it, and it alone; that it laid its tracks in the streets upon the theory and claim that the resolution fully authorized it so to do; that it did not intend to force itself into and take possession of the street in hostility to the rights of any one; that its claim and possession in the street are to be regarded as under and co-extensive with the license and not in hostility to, but subordinate to rights not covered thereby."

And in a somewhat similar case it was held:

"The possession was not adverse, but was under license by act of the legislature, which only extended to the rights of the public. The entry under this license is presumed to have been in subordination to the rights of the owner, and there is no evidence against this presumption." *Broiestedt* v. *Railroad Co.*, 55 N. Y. 220.

See, also, *Brooklyn, etc., R. Co.* v. *Bird,* 134 N. Y. Supp. 1; *McCoy* v. *Thompson,* 84 Or. 141 (164 Pac. 589); *Field* v. *City of Lincoln,* 85 Neb. 781. (124 N. W. 468); *Stillman* v. *City of Olean,* 129 N. Y. Supp. 515. But see *Mitchell* v. *Railway Co.,* 265 Ill. 300 (106 N. E. 833).

Kinney Brothers' entry upon the highway was permissive, under license of the township board. Entry was made under such license and it alone. The presumption is that the possession is subordinate to the actual title. On this record it may be said as a matter of law that Kinney Brothers entered under and because of a license or permission of the township authorities, and in subordination to rights of the abutting landowner. And there is no evidence that the character of the possession following such entry was changed into one of open hostility to the rights of the abutter without the period fixed by the statute of limitations (3 Comp. Laws 1915, § 12311). Kinney at the trial, and perhaps by the deed of 1916, gave expression of a claim of further right in the land. That the Kinney Brothers claimed the land adversely to the abutting owner from 1886 to 1916 does not appear. For that period at least, hostility, a necessary element of adverse possession, is lacking. It was said in *Weber* v. *City of Detroit,* 159 Mich. 14 (36 L. R. A. [N. S.] 1056):

"His statement that he claimed title is of no consequence. Title to lands cannot be maintained by an unexpressed claim existing in the mind of the claim-

ant.    His adverse possession could only commence when he had in some manner notified the public of his adverse claim."

And see *Houghton County* v. *Massie*, 215 Mich. 654; *City of St. Joseph* v. *Seel*, 122 Mich. 70; *Township of Jasper* v. *Martin*, 161 Mich. 336 (137 Am. St. Rep. 508); and note 15 L. R. A. (N. S.) 1178.

A verdict should have been directed for plaintiff.  In *Judson* v. *Duffy*, 96 Mich. 255, it is said:

"Some of the cases seem to have given rise to the assumption that adverse possession becomes a question for the jury when there is any admissible evidence tending to establish it, but we understand the rule to be that until the evidence reaches the required degree of clearness and cogency (which is manifestly a question for the court) there is nothing to go to the jury; and it is a clear duty of courts to protect the rights of landholders from the danger of capricious verdicts by refusing to allow consideration of the question of adverse possession by a jury until evidence sufficient to make a *prima facie* case, under the rule laid down in the case of *Yelverton* v. *Steele* (40 Mich. 538), has been introduced."

Judgment reversed, with costs to appellant, and cause remanded with direction to enter judgment for plaintiff.

BIRD, SHARPE, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.    MCDONALD, J., did not sit.